UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-191-GWU

WANDA M. DYKES,                                                            PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Dykes

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?   If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Dykes

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

3

Dykes

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Dykes

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Dykes

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Dykes

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wanda M. Dykes, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an anxiety disorder, depression, occasional bradycardia, degenerative disc disease, and carpal tunnel syndrome. (Tr. 32).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 35-8).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff could perform any jobs if she were limited to unskilled work at the "light" level of exertion with a "sit/stand option," occasional bending, stooping, crawling and climbing, and no dealing with the public.  (Tr. 858-9).  The VE responded that there

Dykes

were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 859).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. The Court finds that they are not.

As counsel for the plaintiff points out, the plaintiff was treated extensively by her family physician, Dr. Christine Foster, for complaints of anxiety. (E.g. Tr. 517, 520-1, 696-8). She was referred for psychotherapy and prescribed medication in the spring of 2001, with some improvement. (Tr. 519-21). A consultative psychological evaluation by Steve Webne, Ph.D., took place in October, 2001. The plaintiff described a history of having a head injury in a motor vehicle accident in April, 2000, after which a brain lesion requiring surgery had been discovered; she also described a difficult childhood, although apparently gave few details, and indicated that she had been separated from her husband since September, 2000. (Tr. 416-17). Dr. Webne described her as being somewhat tense and having some difficulty with concentration, and noted she described angry feelings toward her future daughter-in-law. (Tr. 418). He indicated that he could not completely rule out the possibility of violence. He diagnosed a depressive disorder and an anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 55. A GAF score in this range reflects moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders

Dykes

(4th Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Webne stated that a prognosis was difficult to ascertain without additional background information but, under the current circumstances, the plaintiff might occasionally demonstrate mild to moderate difficulty retaining even simple instructions in a routine work setting, and that from time to time "her ability to focus on work could be interrupted in the mild to moderate range." (Tr. 420). She had a mild to moderate impairment "at least episodically" in her ability to retain more complex instructional sets and remain focused on work-related tasks in excess of two hours. (Tr. 420-1). She had a "mixed" ability to interact with others, including co-workers, supervisors, and members of the public. (Tr. 421).

By August, 2003, Dr. Foster was diagnosing the anxiety as "severe." (Tr. 717). She referred her patient to a psychiatrist, Dr. Robina Bokhari. Dr. Bokhari saw the plaintiff for the first time on August 21, 2003, and diagnosed chronic post-traumatic stress disorder, with a GAF score of 50. (Tr. 769-71). A GAF of 50 reflects "serious symptoms or any serious impairment in social, occupational, or school functioning" per the DSM-IV-TR. Dr. Bokhari saw the plaintiff on two more occasions in August, and continued the same diagnosis and GAF score, while also prescribing medications including Gabitril, Effexor, and Risperdal. (Tr. 767-8).

The plaintiff also returned to Dr. Foster early in September, saying that her anxiety had become even more severe since her medications had been changed,

9

and she was given Valium on a temporary basis. (Tr. 793). She was also preparing to undergo a workup for cardiac problems.

Dr. Bokhari prepared a mental residual functional capacity Assessment on October 24, 2003 stating that the plaintiff had "marked" or "extreme" restrictions in every area. (Tr. 788-9). The psychiatrist indicated that the plaintiff had a long history of emotional distress and child abuse with ongoing depression, hallucinations, and auditory and visual perceptual difficulties which made it difficult for her to complete her daily activities. (Tr. 790).

The ALJ accepted that the plaintiff had "severe" depression and an anxiety disorder, but stated in his decision that he rejected Dr. Bokhari's assessment because there was no medical evidence to support such extreme limitations and it was inconsistent with the plaintiff's description of her ability to function. (Tr. 33). He found the opinions of non-examining state agency reviewers Edward Ross and Jane F. Brake to be consistent with the medical evidence and with the claimant's statements. (Id.). However, these sources, who had not reviewed any of the evidence after 2001, specifically found that the plaintiff would be "moderately limited" in her ability to perform tasks within a schedule, maintain regular attendance, be punctual within customary tolerances, as well as to interact appropriately with the general public. (Tr. 645-51). They also indicated there would be some limitation in her ability to work in coordination with or proximity to others without being distracted

Dykes

by them.  (Id.).  Therefore, even assuming that Dr. Bokhari's restrictions could be discounted, the hypothetical question did not even reflect the opinions of the state agency sources.

The opinion of a treating source is normally entitled to great weight, if it is supported by sufficient medical data.  See, e.g. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). The defendant argues that Dr. Bokhari had only seen the plaintiff on three occasions over a short period when she gave her opinion, and could only be questionably described as a treating source.  Under the circumstances, while the Court does not view the psychiatrist as a source whose opinion is entitled to complete deference, Dr. Bokhari was, nevertheless, the only examining mental health professional to give an opinion after 2001, and the only other examining source, Dr. Webne, hedged his opinion considerably by statements that he lacked sufficient "documentation" and "background information." (Tr. 420).  Therefore, a medical adviser clearly should have been consulted if the opinion of the treating psychiatrist was to be rejected.

The plaintiff also disputes the ALJ's findings concerning her physical restrictions.  She was treated in 2001 by a neurologist, Dr. Magdy El-Kalliny, on referral from Dr. Foster for low back and left lower extremity pain. Dr. El-Kalliny noted complaints of left lumbar and hip pain and reviewed an MRI showing disk desiccation and herniation at L4-5.  (Tr. 410).  There was tenderness at this level on

Dykes

examination, and also at the left sacroiliac joint, and somewhat decreased sensation to pinprick at L4-5 on the left as compared to the right.  (Tr. 409).  There were no reflex or strength deficits and no dysfunction of gait or coordination.  The physician proceeded with conservative therapy, and by April, after a myelogram and post-myelogram CT scan showed that the plaintiff did not have any spinal canal stenosis, Dr. El Kalliny released her to return to work with restrictions on no lifting, pushing, or pulling more than 35 pounds.  (Tr. 407, 489).  The plaintiff soon complained of increased back pain, however, stating that she was working on a machine that required her to bend.  (Tr. 406).  Dr. El Kalliny noted positive straight leg raising bilaterally with a significant amount of back pain, and advised an intradiscal electrothermal therapy procedure.  In the meantime, he released the plaintiff to return back to work on "light duties," was no repetitive bending.  (Tr. 405).  The plaintiff's insurance would not pay for this procedure, however, and on August 30, 2001, the plaintiff informed the physician that she was not working and was applying for disability.  (Tr. 404).

Dr. El-Kalliny's residual functional capacity statement was prepared January 25, 2002 and limited the plaintiff to lifting no more than 20 pounds frequently, standing, walking, sitting, and driving three hours each (no more than 30 minutes at a time), and occasionally bending, squatting, and crawling.  He added that the plaintiff experienced enough pain to interfere with concentration and attention to

12

Dykes

routine work tasks, would miss more than two days of work a month, and would have more than three episodes of interrupted work shifts per week.  (Tr. 414-15).

   State agency reviewing physicians Kenneth Phillips and Calixto Hernandez found that the plaintiff could perform light level exertion with occasional pushing and pulling with the lower extremities, climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, and needed to avoid climbing ladders, ropes, and scaffolds. (Tr. 666-81).

   The ALJ stated that he did not believe that Dr. El-Kalliny's records showed a significant change in condition between two sets of restrictions he gave but, in any case, concluded that the opinions of the state agency physicians were persuasive. (Tr. 35).  Once again, however, not all of the restrictions given by the state agency sources were included in the hypothetical question.  This is a matter that can be addressed on remand if no new evidence of physical restrictions is submitted.

   The decision will be remanded for further consideration.

   This the 7th day of March, 2007.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13